DELTA LAW GROUP
A PROFESSIONAL LAW CORPORATION
JIM G. PRICE, ESQ., SBN 119324
6569 BRENTWOOD BOULEVARD
P.O. BOX 1417
BRENTWOOD, CA 94513
TELEPHONE: 925-516-4686
FACSIMILE: 925-516-4058

Attorneys for Plaintiff
BARBARA M. PRICE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA M. PRICE,<br><br>      Plaintiff,<br><br>  vs.<br><br>JAMES MARTIN, CHRONIC HEALTH SOLUTIONS, DENT-A-MED dba HC PROCESSING CENTER and DOES 1 through 20, inclusive,<br><br>      Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR ELDER ABUSE AND VIOLATIONS OF THE FEDERAL AND STATE FAIR DEBT COLLECTION PRACTICES ACT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff BARBARA M. PRICE, by and through her attorney, brings this action on behalf of herself and all others similarly situated against Defendant JAMES MARTIN, CHRONIC HEALTH SOLUTIONS, DENT-A-MED dba HC PROCESSING CENTER.

///

///

## JURISDICTION

1. Jurisdiction of this Court arises under 28 U.S.C. Section 1331 and pursuant to 28 U.S.C. Section 1367 for pendent state law claims.

## NATURE OF THE ACTION

2. Plaintiff brings this action against Defendants for their wrongful taking or assisting in the wrongful taking or retention of Plaintiff's property or wrongfully obligating Plaintiff to pay money to Defendants in violation of the financial elder abuse laws of California. Additionally, Plaintiff brings this action against Defendant HC PROCESSING CENTER (hereinafter referred to as "HC") for failing to provide Plaintiff with disclosures required by the Truth in Lending Act before Plaintiff became obligated for the services financed or before the services were rendered. Finally, Plaintiff brings this action against Defendant HC for its debt collection practices conducted in violation of the California Rosenthal Act.

## PARTIES

3. Plaintiff BARBARA M. PRICE resides in Rancho Cordova, California and is an elderly person, over the age of 65.

4. Defendant JAMES MARTIN is an individual and resides in Yolo County.

5. Defendant CHRONIC HEALTH SOLUTIONS is a business entity, form unknown, or a dba of Defendant JAMES MARTIN.

Throughout this complaint any reference to Defendant MARTIN shall mean Defendant MARTIN and Defendant CHRONIC HEALTH SOLUTIONS.

6.  Defendant DENT-A-MED is believed to be an Oklahoma corporation with its principal place of business in Arizona and dba HC PROCESSING CENTER.  Defendant HC does business in California.

## CLASS DEFINITIONS

7.  The proposed Class consists of all elderly (over age 65) California residents where all of the following conditions apply:

    a.   The individual was or is a patient of Defendant MARTIN; and

    b.   The payment for Defendant MARTIN'S services were or are financed through Defendant HC.

## ALLEGATIONS COMMON TO ALL CLASS MEMBERS

8.  The proposed class likely consists of dozens – possibly hundreds – of members and are each so numerous that joinder is impracticable.  The members are readily ascertainable through the records of Defendants.

9.  Questions of law and fact of common and general interest exist as to all members of the proposed class and will predominate over any questions affecting only individual members.

10. Ms. Price's claims are typical of the claims of the members of the proposed class, as she was a patient of Defendant MARTIN and financed his charges through Defendant HC.

11. Ms. Price will fairly and adequately protect the interests of the members of the proposed class. Ms. Price has no interest adverse to the class. Ms. Price is thus ready, willing and able to fairly and adequately represent the interests of the class.

12. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the damages suffered by each individual member are relatively small compared to the expense and burden of prosecuting individual cases.

13. If individual members of the class were required to bring separate actions, courts could be confronted by multiple lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contract to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, the class action presents fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

14. Many of the members of the proposed class may be unaware of the existence of laws that provide them with

protection from the facts described above and therefore may not seek out legal assistance without the classes.

### FACTUAL ALLEGATIONS

15.  Defendant MARTIN advertises to the general public via the internet and on television, Channel 10, Sacramento that he is a doctor and diagnoses and treats Type 2 diabetes, thyroid conditions, neuropathy, and chronic pain.  On his website, Defendant MARTIN represents:

> "Dr. Martin is currently in the process of working toward Board Certified Functional Neurologist with the top Neurologist in the Country and has focused on functional metabolic medicine for 12 years."

> "Many of his skills and abilities to help patients with chronic and severe health conditions come from learning from a wide variety of medical doctors, nutrition experts, functional endocrinology experts, immunologists, chiropractors, osteopathic medical doctors, homeopathic doctors over the past decade."

> "Dr. Martin performs extremely comprehensive saliva hormone testing, comprehensive blood testing, stool analysis, inflammation testing, autoimmune antibody testing, food sensitivity testing not typically performed by traditional medicine and insurance companies to uncover the causes to loss of proper health status and underlying reasons for many conditions like type 2 diabetes, auto immune thyroid conditions, vertigo, dizziness, fibromyalgia, peripheral neuropathy, chronic pain, insomnia and a number of other health conditions."

16.  California Business and Professions Code Section 2052 provides that "any person who practices or attempts to practice, or who advertises or holds himself out as practicing, any system or mode of treating the sick or afflicted in this state, or who

diagnoses, treats, operates for, or prescribes for any ailment, blemish, deformity, disease, disfigurement, disorder, injury, or other physical or mental condition of any person, without having at the time of doing so a valid, unrevoked, or unsuspended certificate as provided in this chapter or without being authorized to perform the act pursuant to a certificate obtained in accordance with some other provision of law is guilty of a public offense. . .."

17.  Defendant MARTIN does not have a certificate as provided in Chapter 5 of the California Business and Professions Code, nor is he authorized to perform the above services pursuant to a certificate obtained in accordance with some other provision of law.  Defendant MARTIN represented to Plaintiff and others similarly situated that he is a doctor and implies that he is licensed to practice the above services in this state.  Defendant misrepresents that his diagnostic and treatment skills are far superior to those of other doctors, as he runs a fully body of tests.  In his advertisements he represents that it is the full body of tests that he conducted that distinguished his services from those of other doctors.  After luring Plaintiff and others similarly situated into his office, Defendant MARTIN meets with the potential patient, provides some initial services, and has patients commit to a treatment option during this initial visit.  To get the patient to commit to his services during the initial visit he recommends treatment

options even before the patient has taken the diagnostic tests, including blood tests, and he has reviewed the results.

18.  Defendant MARTIN offered Plaintiff, and Plaintiff is informed he offered others similarly situated, four treatment options ranging in price from $2,897.00 to $8,946.00.  Defendant represented to Plaintiff, and Plaintiff is informed that he represented to others similarly situated, that each of the treatments he recommended would effectively treat Plaintiff, even though there was a $6,000.00 price difference between the least and most expensive treatments.  Defendant MARTIN even offers financing of his services through Defendant HC.

19.  Plaintiff, an elderly person (over the age of 65) who wanted to improve her health, believing Defendant MARTIN to be a doctor licensed in California to practice the services he offers and who she could trust and bestow confidence in.  Plaintiff relied upon his representations, and became contractually obligated to pay $3,084.00 to Defendant HC.  Plaintiff is informed and believes that Defendant MARTIN has a contractual arrangement with Defendant HC whereby it is agreed that Defendant MARTIN can have his patients fill out a credit card application and submit it to Defendant HC for a credit card to be used to finance Defendant MARTIN'S services.

20.  If the patient is approved for Defendant HC'S credit card, Defendant HC will then pay Defendant MARTIN his full fee and collect that amount from the patient plus exorbitant fees.

Plaintiff did not receive, and Plaintiff is informed and believes that others similarly situated did not receive, the necessary disclosures required by the Truth in Lending Act (TILA) prior to receiving at least some of the services which were financed through Defendant HC and before signing contracts. Plaintiff is informed and believes Defendant HC provided financing to others similarly situated.

21.  On September 17, 2013, after meeting with Defendant MARTIN, Plaintiff returned to her home.  The next day, September 18, 2013, Plaintiff received a telephone call from Defendant MARTIN'S office advising her that they had given her the wrong laboratory paperwork and needed to deliver the correct paperwork to her at her home.  Defendant MARTIN and/or his staff had given Plaintiff the laboratory paperwork for another patient.  Two people subsequently arrived at Plaintiff's door.  They delivered the laboratory paperwork and had Plaintiff sign some additional documents.  Plaintiff signed what was presented to her, as she was becoming frightened and simply wanted them to leave.  The individuals did not appear professional or that they worked at a doctor's office.

22.  On September 18, 2013, after the two individuals left her house, Plaintiff became suspicious about Defendant MARTIN and his services.  On September 19, 2013, she called Defendant HC and told them not to pay Defendant MARTIN.  Plaintiff was told Defendant MARTIN would not be paid.

Case 2:14-cv-00283-JAM-DB   Document 1   Filed 01/29/14   Page 9 of 16

23. Subsequently, Plaintiff discovered that Defendant MARTIN had been paid by Defendant HC. Plaintiff, through her attorney, then wrote to Defendant HC advising that Plaintiff did not receive the services Defendant MARTIN was paid for and forwarded to Defendant HC a detailed letter which had been written to Defendant MARTIN questioning his license to practice as a doctor. Defendant HC initially acknowledged receipt of Plaintiff's letter and advised that her account was placed in dispute status while they investigated Plaintiff's claim. Defendant further advised that Plaintiff did not need to make a payment while her account was in dispute status.

24. On December 26, 2013, the day after Christmas, and long after Defendant HC knew Plaintiff to be represented by counsel, one of its employees named Rigo, shattered the peace and joy of the holiday season by calling Plaintiff directly. Plaintiff immediately told Rigo to call her attorney. Rigo told Plaintiff that she owed a payment of $215.00. Defendant HC had previously advised Plaintiff that she did not need to pay while her account was in dispute status. Rigo further told Plaintiff not to hang up because he would just call her back.

25. Defendant HC did not investigate Plaintiff's claim against Defendant MARTIN as it had previously represented it would do. Defendant subsequently advised Plaintiff it had her signed application and charge slip and that was sufficient for it to take the position the account was valid, even though

COMPLAINT AND DEMAND FOR JURY TRIAL                                    9

Defendant had been put on notice that Defendant MARTIN had wrongfully obligated Plaintiff to services he is not licensed to provide and that Plaintiff did not receive. Defendant HC assisted in the wrongful taking and/or retention of Plaintiff's property.

## FIRST CAUSE OF ACTION
## (ELDER FINANCIAL ABUSE)

26. Plaintiff incorporates herein each and every allegation of the previous allegations of the complaint as if fully set forth below.

27. Defendant MARTIN at all relevant times was entrusted with the care of Plaintiff or stood in a position of trust to Plaintiff or had a fiduciary duty to Plaintiff as alleged herein.

28. Defendant HC and DOES 1 through 10 assisted in taking and/or secreting and/or appropriating and/or obtaining and/or retaining the property or personal assets of Plaintiff.

29. Defendants' actions in taking and/or secreting and/or appropriating and/or obtaining and/or retaining the property of Plaintiff for a wrongful use or with the intent to defraud or by undue influence, constitutes elder financial abuse as defined by Welfare and Institutions Code Sections 15610.30, and Plaintiff is entitled to the remedies provided by Welfare and Institutions Code Section 15657.5.

Defendant had been put on notice that Defendant MARTIN had wrongfully obligated Plaintiff to services he is not licensed to provide and that Plaintiff did not receive. Defendant HC assisted in the wrongful taking and/or retention of Plaintiff's property.

## FIRST CAUSE OF ACTION
## (ELDER FINANCIAL ABUSE)

26. Plaintiff incorporates herein each and every allegation of the previous allegations of the complaint as if fully set forth below.

27. Defendant MARTIN at all relevant times was entrusted with the care of Plaintiff or stood in a position of trust to Plaintiff or had a fiduciary duty to Plaintiff as alleged herein.

28. Defendant HC and DOES 1 through 10 assisted in taking and/or secreting and/or appropriating and/or obtaining and/or retaining the property or personal assets of Plaintiff.

29. Defendants' actions in taking and/or secreting and/or appropriating and/or obtaining and/or retaining the property of Plaintiff for a wrongful use or with the intent to defraud or by undue influence, constitutes elder financial abuse as defined by Welfare and Institutions Code Sections 15610.30, and Plaintiff is entitled to the remedies provided by Welfare and Institutions Code Section 15657.5.

30. Defendant HC, and DOES 1 through 10, assisted in taking and/or secreting and/or appropriating and/or obtaining and/or retaining property of Plaintiff for a wrongful use or with the intent to defraud or by undue influence, or constitute elder financial abuse as defined by Welfare and Institutions Code Sections 15610.30(2), and Plaintiff is entitled to the remedies provided by Welfare and Institutions Code Sections 15657.5.

31. Defendants knew or should have known that this conduct was likely to be harmful to Plaintiff.

32. Plaintiff is entitled to compensatory damages in an amount according to proof with interest.

33. Plaintiff has incurred, and will continue to incur, attorneys' fees, and costs in this litigation. Plaintiff, if successful in this action, is entitled to recover such fees and costs from Defendants, under the provisions of Welfare and Institutions Code Section 15657.5(a).

34. In committing the actions and conduct described above, Defendants, and each of them, acted with recklessness, oppression, fraud, and malice, and Plaintiff therefore is entitled to an award of exemplary or punitive damages pursuant to Welfare and Institutions Code Section 15657.5 and Civil Code Section 3294.

WHEREFORE, Plaintiff prays judgment against Defendants as set forth below.

## SECOND CAUSE OF ACTION
### (INVASION OF PRIVACY BY INTRUSION UPON SECLUSION)

35. Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

36. Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.**

15 U.S.C. § 1692(a)(emphasis added).

37. Defendant HC and/or their agents intentionally and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of Plaintiff, namely, by unlawfully attempting to collect a debt and thereby invaded Plaintiff's privacy.

38. Defendant and its agents intentionally and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiff's right to privacy.

39. Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, and private concerns or affairs.

40. The conduct of these Defendants and their agents, in engaging in the above-described illegal collection conduct against Plaintiff, resulted in this intrusion and invasion of privacy against Plaintiff by this Defendant which occurred in a way that would be highly offensive to a reasonable person in Plaintiff's position.

41. As a result of such intrusions and invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from each and every Defendant.

### THIRD CAUSE OF ACTION
**(VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT §§ 1788-1788.32 (RFDCPA))**

42. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

43. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the RFDCPA, including but not limited to California Civil Code Section 1788.14 and 1788.17 by violating 15 USC, 1692c(a)(2), 1692d, and 1692f.

44. As a result of Defendants' violations of the RFDCPA, Plaintiff is entitled to any actual damages pursuant to California Civil Code § 1788.30(a); statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to California Civil Code § 1788.30(b); and reasonable attorney's fees and costs pursuant to California Civil Code § 1788.30(c) from Defendants.

### FOURTH CAUSE OF ACTION
### (VIOLATION OF TILA)

45. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

46. The disclosure statement issued in conjunction with this consumer credit transaction violated the requirements of Truth in Lending and Regulation Z in the following and other respects:

   a. By failing to provide the required disclosures prior to consummation of the transaction in violation of 15 U.S.C. § 1638(b) and Regulation Z § 226.17(b); and

   b. By failing to make required disclosures clearly and conspicuously in writing in violation of 15 U.S.C. § 1632(a) and Regulation Z § 226.17(a).

47. By reason of the aforesaid violations of the Act and Regulation Z, Defendant is liable to Plaintiff in the amount of

twice the finance charge, actual damages to be established at trial, and attorney's fees and costs in accordance with 15 U.S.C. § 1640.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on her own behalf and on behalf of the Class, prays for relief as follows:

1. An Order certifying the proposed Class and appointing Plaintiff to represent the proposed Class and designating her counsel as Class Counsel;

2. A judgment awarding Plaintiff and the Class restitution and/or disgorgement;

3. A judgment awarding Plaintiff actual, statutory and punitive damages;

4. A judgment awarding Plaintiff attorney's fees, expert witness fees and other costs, including pre-judgment and post-judgment interest thereon;

5. For compensatory damages pursuant to Welfare and Institutions Code Section 15657.5(a), awarded based on Plaintiff's elder financial abuse claim as defined by Welfare and Institutions Code Section 15610.30, in the sum according to proof and interest, reasonable attorney's fees and costs and other damages in an amount to be determined by Court;

6. For punitive damages pursuant to Welfare and Institutions Code Section 15657.5 and Civil Code Section 3294;

7. For interest at the legal rate on the foregoing sum pursuant to Section 3336 of the Civil Code;

8. For an award of actual damages pursuant to California Civil Code § 1788.30(a) in an amount to be adduced at trial against each and every Defendant and for Plaintiff;

9. For an award of statutory damages of $1,000.00, pursuant to California Civil Code § 1788.30(b) against each and every Defendant and for Plaintiff;

10. For an award of costs of litigation and reasonable attorney's fees, pursuant to California Civil Code § 1788.30(c) against each and every Defendant and for Plaintiff; and

11. Such other relief as the Court deems proper.

DATED: January 24, 2014           Respectfully submitted,

                                  DELTA LAW GROUP

                                  BY: _____
                                  JIM G. PRICE
                                  Attorneys for Plaintiff
                                  BARBARA M. PRICE